# SLAGLE ET AL. *v.* OHIO.

No. 105. Argued February 27–28, 1961.—Decided May 15, 1961.

260

*Thelma C. Furry* argued the cause and filed a brief for appellants.

*Norman J. Putman* argued the cause and filed a brief for appellee.

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

Pursuing its statutory powers and duties to investigate subversive activities in Ohio,[1] the Ohio Un-American

---

[1] Ohio Rev. Code § 103.34 provides:

"POWERS AND DUTIES.

"The un-American activities commission shall:

"(A) Investigate, study, and analyze:

"(1) All facts relating to the activities of persons, groups, and organizations whose membership includes persons who have as their objective or may be suspected of having as their objective the overthrow or reform of our constitutional governments by fraud, force, violence, or other unlawful means;

"(2) All facts concerning persons, groups, and organizations, known to be or suspected of being dominated by or giving allegiance to a foreign power or whose activities might adversely affect the contribution of this state to the national defense, the safety and security of this state, the functioning of any agency of the state or national government, or the industrial potential of this state;

"(3) The operation and effect of the laws of this state, of the several other states, and of the United States, which purport to outlaw and control the activities enumerated in this section and

Activities Commission scheduled a hearing to commence at the Stark County Courthouse on the morning of October 21, 1953, and subpoenaed these five appellants to appear and testify before it at that time and place. Each appeared with counsel, was sworn and examined. Though having both constructive and actual knowledge of Ohio's immunity statute,[2] each objected to most of the questions propounded[3] on the ground that an answer would compel him to be a witness against himself, in violation of the Ohio Constitution and of the Fifth Amendment to the United States Constitution.[4] Appellants were

to recommend such additional legislation or revision of existing laws as may seem advisable and necessary;

"(B) Maintain a liaison with any agency of the federal, state, or local governments in devising and promoting means of disclosing those persons and groups who seek to alter or destroy the government of this state or of the United States by force, violence, intimidation, sabotage, or threats of the same.

"The commission has such additional right, duties, and powers as are necessary to enable it fully to exercise those specifically set forth in this section and to accomplish its lawful objectives and purposes."

[2] Ohio Rev. Code § 101.44 provides:

"Except a person who, in writing, requests permission to appear before a committee or subcommittee of the general assembly, or of either house thereof, or who, in writing, waives the rights, privileges, and immunities granted by this section, the testimony of a witness examined before a committee or subcommittee shall not be used as evidence in a criminal proceeding against such witness, nor shall a person be prosecuted or subjected to a penalty or forfeiture on account of a transaction, matter, or thing, concerning which he testifies, or produces evidence. This section does not exempt a witness from the penalties for perjury."

[3] Except for a few preliminary questions, each appellant objected to and declined to answer most of the questions propounded—Slagle, 97 of the next 129 questions; Bohus, 97 of the next 99 questions; Perry, 110 of the next 118 questions; Cooper, 76 of the next 103 questions; and Mladajan, 88 of the next 123 questions.

[4] In addition to various state grounds, each appellant based his objections to the questions on the Fifth Amendment, but Slagle also

not, in most instances, directed to answer, but in a few instances some of them (Perry, Cooper and Mladajan) were directed to answer the question, yet flatly refused to do so.[5]

---

invoked the First and Fourteenth Amendments, Perry also invoked the First, Fourth, Ninth and Fourteenth Amendments, and appellant Cooper also invoked the Fourth and Ninth Amendments, to the United States Constitution.

[5] Appellant Slagle, too, was directed by the chairman to answer one question, but he thereupon answered it. He was not directed to answer any other question.

Appellant Bohus was not directed to answer any of the questions.

Appellant Perry was directed by the chairman to answer the question, "What is your husband's name?" but refused to answer and that refusal was made the subject of Count 1 of the indictment against her. She was also directed to answer the question, "What are your parents' names?" but refused to answer and that refusal was made the subject of Count 2 of the indictment. However, the trial court acquitted her on that count on the ground that the question was immaterial. She was not directed to answer any other question.

Appellant Cooper was directed to answer the following questions:

"Where did you reside prior to September, 1948?"  (Count 1.)

"What was your name at the time you were born; what was the name given you on baptism?"  (Count 2.)

"Did you ever live in the City of St. Louis, Missouri?"  (Count 5.)

"What is your husband's name, Mrs. Cooper?"  (Count 6.)

But she nevertheless refused to answer in each instance and those refusals were made the subjects of Counts 1, 2, 5 and 6, respectively, of the indictment against her. Although she refused, when directed, to answer another question, she was not indicted for that refusal. She was not directed to answer the questions on which Counts 3, 4, 7, 8, 9 and 10 of the indictment were based.

Appellant Mladajan was directed to answer the question, "Mrs. Mladajan, have you ever been in meetings at the Croatian Hall at any time except in your capacity as an employee?" but she refused to answer and that refusal was made the subject of Count 6 of the indictment against her. She was not directed to answer any other question.

Acting pursuant to Ohio Rev. Code § 103.35,[6] the members of the Commission who sat at the hearing authorized the chairman to cause contempt proceedings to be initiated against appellants under Ohio Rev. Code §§ 2705.02 to 2705.09,[7] and on December 24, 1953, each appellant was separately indicted in the court of common pleas of Stark County on 10 counts—each count charging willful failure, in violation of § 2705.02, to answer a question propounded by the Commission. Upon a joint trial to the court, each appellant was convicted and sentenced on some of the counts.[8] On consolidated appeals, the

---

[6] Ohio Rev. Code § 103.35 provides, in relevant part, that "[i]n case of . . . the refusal of any person . . . to testify to any matters regarding which he may be lawfully interrogated . . . the chairman may be authorized by a majority of the members sitting at the time the alleged offense is committed, to cause a proceeding for contempt to be filed and prosecuted in the court of common pleas of any county under sections 2705.03 to 2705.09, inclusive, of the Revised Code. . . ."

[7] Ohio Rev. Code § 2705.02 provides, in pertinent part:

"A person guilty of any of the following acts may be punished as for a contempt:

.          .          .          .          .

"(C) A failure . . . to answer as a witness, when lawfully required."

Ohio Rev. Code § 2705.05 provides:

"Upon the day fixed for the trial in a contempt proceeding the court shall investigate the charge, and hear any answer or testimony which the accused makes or offers.,

"The court shall then determine whether the accused is guilty of the contempt charge. If it is found that he is guilty, he may be fined not more than five hundred dollars or imprisoned not more than ten days, or both."

[8] Appellant Slagle was convicted on Counts 3 to 10, inclusive; Bohus was convicted on Counts 1, 2, 3, 4, 5, 7, 8 and 9; Perry was convicted on Counts 1, 3, 4, 5, 7, 8 and 9; Cooper was convicted on Counts 1 to 9, inclusive; Mladajan was convicted on Counts 1 to 8, inclusive, and 10. Each was sentenced to imprisonment for 10 days

Stark County Court of Appeals affirmed,[9] the Supreme Court of Ohio, finding no debatable constitutional question presented, dismissed appellants' appeals to that court, 170 Ohio St. 216, 163 N. E. 2d 177, and, on appeals to this Court, we postponed further consideration of our jurisdiction to the hearing on the merits. 364 U. S. 811.

Appellants simply assert that we have jurisdiction over these appeals under 28 U. S. C. § 1257 (2). Despite the plain import of our postponing order, see Rule 16, par. 4, of this Court, they have entirely failed to show that any "timely insistence [was made] in the state courts that a state statute, as applied, is repugnant to the federal Constitution, treaties or laws." *Charleston Federal Savings & Loan Assn.* v. *Alderson,* 324 U. S. 182, 185. Accordingly, the appeals are dismissed. See *Raley* v. *Ohio,* 360 U. S. 423, 435. But since various federal constitutional claims were made below and are renewed here, 28 U. S. C. § 1257 (3), we consider the appeal papers as petitions for certiorari and, in view of the public importance of at least one of the questions presented, grant certiorari, 28 U. S. C. § 2103.

Appellants' principal contention here is that the judgments, finding them guilty of willful refusal to answer the Commission's questions although the Commission did not overrule their timely objections to the questions nor direct that they be answered, but appeared to sustain, or at least to acquiesce in, those objections, deprive appellants of due process in violation of the Fourteenth Amendment. In the peculiar factual situation presented, and limited to the questions which they were not directed

---

on each count—the sentences on all counts, in each instance, to run concurrently—and was fined $500 on each count, but the fines, other than the first one, were remitted in each instance.

[9] The opinion of the Stark County Court of Appeals is not reported.

to answer, we have concluded that appellants are right in this contention.

Surely traditional notions of fair play contemplate that a person summoned to testify before any adjudicatory or investigatory body, including a legislative investigatory committee, may object to any question put to him upon any available ground, however tenuous. And the Ohio Commission, several times and in many ways, clearly gave appellants to understand that such was their right at this hearing. Exercising that right, if not actually accepting the Commission's invitation, appellants, except for a few preliminary questions, objected to most of the questions put to them, principally on the ground of the Fifth Amendment (but see note 4). With important exceptions to be noted, instead of overruling the objection or in any way directing the witness to answer the question, the Commission gave every indication that it sustained, or at least acquiesced in, the objection by immediately passing on to the next question. That process was scores of times repeated.

But, and lending emphasis to its normal acquiescence in the objections, the Commission, at times, adopted another and very different procedure. When the Commission's counsel advised the Commission that he considered a particular question to be competent and important and asked that the witness be directed to answer it, the chairman, in each such instance, directed the witness to answer the question. And in every such instance care was taken, either by the Commission's counsel or its chairman, to have the record show that at least a quorum of the Commission were then present and sitting. In that manner, as more fully shown in note 5, Slagle was directed to answer one question, and thereupon promptly answered it, but he was not directed to answer any other question; Bohus was not directed to answer any ques-

tion; Perry was thus directed to answer the two questions that were made the subjects of Counts 1 and 2 of her indictment (she was acquitted on Count 2), but was not directed to answer the questions upon which the other eight counts of her indictment were based; Cooper was thus directed to answer the four questions that were made the subjects of Counts 1, 2, 5 and 6 of her indictment, but was not directed to answer the questions upon which the other six counts of her indictment were based; and Mladajan was thus directed to answer the question that was made the subject of Count 6 of her indictment, but was not directed to answer the questions upon which the other nine counts of her indictment were based.

No particular form of words is necessary either to sustain or overrule an objection and thus either to excuse or require an answer to the question. All that is necessary is that the hearing tribunal make plain its disposition of the objection and whether or not an answer to the question is expected and required. If, as frequently happens, after an objection has been made, the hearing officer, addressing the examiner, merely says, "Pass on to your next question," it would indeed be plain that he had, at least temporarily, sustained or acquiesced in the objection and was not requiring an answer to be given. That is almost precisely what happened here. Though, upon these objections being made, the Commission did not formally direct its counsel to pass on to his next question, either the counsel or some member of the Commission did in fact immediately pass on to the next question. Those objections must therefore be regarded as sustained or acquiesced in by the Commission. To hold that these witnesses, in these circumstances, willfully and contumaciously refused to answer those questions would deeply offend traditional notions of fair play and deprive them of due process.

That "a clear disposition of the witness' objection is a prerequisite to prosecution for contempt is supported by long-standing tradition here and in other English-speaking nations. In this country the tradition has been uniformly recognized in the procedure of both state and federal courts." *Quinn* v. *United States,* 349 U. S. 155, 167–168, and cases cited. See also *Emspak* v. *United States,* 349 U. S. 190, 202; *Bart* v. *United States,* 349 U. S. 219, 223. "Because of the [Commission's] consistent failure to advise [appellants] of [its] position as to [their] objections, [appellants were] left to speculate about the risk of possible prosecution for contempt; [they were] not given a clear choice between standing on [their] objection[s] and compliance with a committee ruling." *Bart* v. *United States, supra,* at 223.

In these circumstances, to hold that these witnesses willfully and contumaciously refused to answer the questions to which they objected but which they were not directed to answer would deprive them of due process in violation of the Fourteenth Amendment.

As to appellants' remaining contentions, including, (1) that because the Ohio immunity statute (see note 2) does not afford immunity from federal prosecution, they could not lawfully be compelled to answer questions over their Fifth Amendment objections to them, (2) that the questions which they refused to answer were not pertinent to the inquiry, and (3) that the Commission's investigation was without legislative purpose, the Court is equally divided.

It follows that the judgments against Slagle and Bohus must be reversed; that the judgment against Perry must be reversed as to Counts 3, 4, 5, 7, 8 and 9, and affirmed, by an equally divided Court, as to Count 1; that the judgment against Cooper must be reversed as to Counts 3, 4, 7, 8 and 9, and affirmed, by an equally divided Court,

as to Counts 1, 2, 5 and 6; and that the judgment against Mladajan must be reversed as to Counts 1, 2, 3, 4, 5, 7, 8 and 10, and affirmed, by an equally divided Court, as to Count 6.

*Appeals dismissed and certiorari granted.*

*On writs of certiorari, judgments reversed as to Slagle and Bohus; judgments reversed in part and affirmed, by an equally divided Court, in part as to Perry, Cooper and Mladajan.*

MR. JUSTICE FRANKFURTER took no part in the consideration or decision of these cases.