Gibson, J.
The issue is whether defendant’s conviction of a violation of New York’s flag desecration statute was in contravention of his right of free speech under the First Amendment to the Constitution of the United States. The particular *117 penal provision found to have been violated provides, in substance, that any person who shall publicly mutilate, deface, defile, or defy, trample upon, or cast contempt upon the flag of the United States of America, either by words or act, shall be guilty of a misdemeanor (former Penal Law, § 1425, subd. 16, par. d, now General Business Law, § 136, subd. d). The constitutional question in respect of the proscribed defilement by an “ act ”, rather than by “ words ”, was expressly left open in Street v. New York (394 U. S. 576, 594), which reversed our affirmance of a conviction under this same statute (People v. Street, 20 N Y 2d 231). We have concluded that the conviction in the case now before us infringed no constitutional guarantee.
The defendant, the proprietor of an art gallery in the City of New York, publicly displayed and exposed for sale, certain “ constructions ”, comparable to sculptures, which had been fashioned by an artist as expressive of protest against the Vietnam war and which, in each case, prominently incorporated the American flag.
The complaint, upon which defendant was charged and convicted, alleged, among other violations of the statute, that defendant publicly displayed the flag of the United States of America in the form of the male sexual organ, erect and protruding from the upright member of a cross; also, in the form of a human body, hanging from a yellow noose; and, again, wrapped around a bundle resting upon a two-wheeled vehicle, shown by photographs in evidence to resemble a gun caisson.[1]
For the purposes of this opinion it seems necessary to discuss only the first of the constructions complained of. Testifying in his own behalf, the defendant said that this was protest art; and that during the exhibition of the constructions, background *118 music, consisting of war protest songs, was played from a tape. Asked, on cross-examination, as to the use of the flag for the purpose of protest, he said that the object extending from the vertical member of the cross and wrapped in a small flag was representative of a human penis; that tassels at the base of this protrusion represented “ probably * * * decorative or
pubic hair, depending on what one decides it looks like to him.”[2] Asked as to the particular expression and protest intended to be conveyed, the witness said that perhaps the penis represents the sexual act, which by some standards is considered an aggressive act; that organized religion is also symbolized by the figure, which seems to suggest that organized religion is supporting the aggressive acts suggested.
Only recently this court had occasion to give extended consideration to section 1425 of the former Penal Law and specifically to paragraph d of subdivision 16 thereof. In People v. Street (20 N Y 2d 231, revd. 394 U. S. 576, supra) we affirmed the conviction of a defendant who, upon hearing of the shooting of the civil rights leader James Meredith, took an American flag to a street corner, burned it, saying, “We don’t need no damn flag ”, and made other statements to people who gathered to watch these actions, one of these being the arresting policeman, to whom defendant said: “If they let that happen to Meredith, we don’t need an American flag.” The crux of the defense was that defendant’s acts and speech were proper forms of protest legitimized by the First Amendment. Synopsizing Chief Judge Ftjld’s opinion upholding the conviction, we find the position of the court to be this: While nonverbal expression may be a form of speech within the protection of the First and Fourteenth Amendments, the same kind of freedom is not afforded to those who communicate ideas by conduct as to those who communicate ideas by pure speech; that the State may legitimately proscribe many forms of conduct and no exception is made for activities to which some would ascribe symbolic significance; that, in sum, the cases show that the constitutional guarantee of free speech covers the substance rather than the *119 form of communication, but that if the substance is being conveyed by a form violative of the public health, safety or well-being, then the First Amendment protection is subordinated to the general public interest. With regard specifically to the flag desecration statute it was squarely held that it was a valid statute in that, regardless of the major motivating factor behind its enactment, there was a clear legislative purpose to prevent a breach of the peace; that the Supreme Court long ago in Halter v. Nebraska (205 U. S. 34, 41) stated: “ [I]nsults to a flag have been the cause of war, and indignities put upon it, in the presence of those who revere it, have often been resented and sometimes punished on the spot.” This court said that our statute was designed to prevent the outbreak of such violence by discouraging contemptuous and insulting treatment of the flag in public.
The Chief Judge’s opinion then noted that concededly defendant’s acts arose out of indignation and a sense of outrage; that the act was one of incitement and as such threatened the public peace, a result which the State is legitimately interested in preventing. With regard to Street’s purpose — to express indignation and protest—the parallel to the case before us is clear. Here, the expression, if less dramatic, was given far wider public circulation and, in consequence, perhaps, a measurable enhancement of the likelihood of incitement to disorder, by the placement of one of the constructions in a street display window of defendant’s gallery on Madison Avenue in the City of New York, and the exhibition and exposure for sale of the companion pieces in the public gallery and mercantile establishment within. Implicit in the invitation to view was the opportunity thereby afforded to join in the protest, or in counterprotest, with the consequent potential of public disorder; or so the trier of the facts could properly find.
The Supreme Court’s reversal of Street (394 U. S. 576, supra) seems not to have questioned or disturbed the rationale enunciated here by Chief Judge Fuld. The majority felt that since it could not be determined what part of Street’s conviction rested on the fact that he was charged with uttering constitutionally protected words and what part upon his act of setting fire to the flag, the conviction could not be upheld. The majority expressly left open the question concerning the validity of the *120 conviction insofar as it was sustained on the basis that Street could be punished for flag burning 11 even though the burning was an act of protest ” (p. 594).[3]
The dissenters considered that the few words that Street uttered were part of the act of symbolic conduct, from which they could not be separated, and thus posed an issue which the majority opinion should have met.[4]
While it seems well established that a clear violation of a valid statute may not be saved on First Amendment grounds, it is necessary in this case eventually to reach a somewhat different question, which is, whether or not the act said to constitute the violation is tempered by the application of the First Amendment. In other words, while burning, spitting upon and stomping upon the flag are clearly and inherently disrespectful, do we reach a point where other acts may be performed with regard to the flag which do not so easily admit of the requisite contemptuousness ; where the intent behind the act may be of the purest sort, but where the results of the act may nevertheless have the effect which, as Chief Judge Fuld found in Street, the statute was validly designed to prevent—the arousement of passions likely to lead to disorder? Before considering that problem, and in aid of its solution, it would be well to examine several significant recent cases.
*121 Tn Hoffman v. United States (256 A. 2d 567 [Ct. of App., D. C., 1969]), the defendant, who was to testify before the House Un-American Activities Committee, upon approaching the House Office Building was arrested for desecrating the flag, in that he was wearing a shirt that resembled the American flag. He was convicted of breaching that part of the .statute which proscribed defilement of the flag. On appeal to the District of Columbia Court of Appeals, Hoffman argued that the statute was vague, that he was entitled to First Amendment protection and that his acts did not constitute defilement since he undertook no physical destruction of the flag. On the vagueness question the court held that the statute admitted of that degree of reasonable certainty as to what could constitute a violation, so that it could not be said that a person possessing a reasonable degree of intelligence could not understand what conduct would be disrespectful to the flag and what conduct would not. The First Amendment argument was rather summarily disposed of, the court relying on the recently decided case of United States v. O’Brien (391 U. S. 367), a draft card burning case hereinafter discussed. Finally, the court held that wearing the flag, or part of it, as a shirt was a rather clear act of defilement in that the flag was thus dishonored; that the idea of dishonorment was the key to the question whether the flag was defiled. The court concluded (256 A. 2d 567, 570) “ that the use of the word 1 defile ’ in the subject Statute was intended to include public conduct which brings shame or disgrace upon the flag by its use for an unpatriotic or profane purpose. It is our opinion that the wearing of a shirt which resembles the American flag, under the circumstances of this case, is a physical act which defiles the flag in violation of 18 U. S. C. § 700. Such a use of the flag would ‘ degrade and cheapen the flag in the estimation of the people, as well as to defeat the object of maintaining it as an emblem of national power and national honor. ’ Halter v. Nebraska, 205 U. S. 34, 42”. Similarly, in People v. Cowgill (78 Cal. Rptr. 853, app. dsmd. 396 U. S. 371), the California court affirmed the conviction of a defendant for wearing a vest fashioned from a cut-up American flag, in violation of a flag defilement statute, the court posing and then answering affirmatively the question left open in Street (supra), whether the *122 States have power to protect the flag from acts of desecration and disgrace.
It is necessary to make reference, also, to the draft card burning cases of United States v. Miller (367 F. 2d 72, cert. den. 386 U. S. 911) and O’Brien v. United States (376 F. 2d 538). In O’Brien, the First Circuit held that a 1965 amendment to title 50 (§ 462, subd. [b]) of the United States Code, proscribing destruction of draft cards, was an unconstitutional abridgement of freedom of speech. The Supreme Court disagreed in United States v. O’Brien (391 U. S. 367, supra). The only dissent was that by Justice Douglas. The court, through Chief Justice Warren, noted that the statute on its face deals with conduct having no connection with speech. “It prohibits the knowing destruction of certificates issued by the Selective Service System, and there is nothing necessarily expressive about such conduct. * * * A law prohibiting destruction of Selective Service certificates no more abridges free speech on its face than a motor vehicle law prohibiting the destruction of drivers’ licenses, or a tax law prohibiting the destruction of books and records.” (391 U. S. 367, 375.) It should be noted that O’Brien publicly burned his card on the South Boston courthouse steps, a crowd having been attracted by his and his companions’ activities. The draft card statute, like the flag statutes, had a legitimate reason behind its enactment.
One of O’Brien’s contentions was that the action he took with his draft card was a communication of ideas by conduct and that this conduct expressed his position as regards the war and the draft. As to this the court stated: ‘ ‘ However, even on the assumption that the alleged communicative element in O’Brien’s conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. * # * a governmental regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.” (391 U. S. 367, 376-377; emphasis supplied.) *123 Of those requisites the flag desecration statute need only be considered with respect to the one above emphasized.
The discussion thus far enables us to reach certain conclusions. It becomes clear, upon considering Chief Judge Fuin’s statement in Street (20 N Y 2d 231, supra), along with the authorities there cited, and the more recent cases discussed just above, that a person with the purest of intentions may freely proceed to disseminate the ideas in which he profoundly believes, but he may not break a valid law to do it. The flag statute has been repeatedly held valid from the Halter case (supra) on down, even through Hoffman v. United States (supra) and People v. Cowgill (supra), where the flag was not, in either case, burned, spit or trampled upon, but was used, in each case, to further political or ideological viewpoints by employment as an article of clothing. There appears no significant difference between those situations and the one we are here considering. The defendant may have a sincere ideological viewpoint, but he must find other ways to express it. Whether defendant thinks so or not, a reasonable man would consider the wrapping of a phallic symbol with the flag an act of dishonor; he would consider the hanging effigy a dishonor; and to a lesser and more debatable extent it might be found that wrapping the flag in chains, attaching it to a gas meter, and fashioning the other representations involved, were acts dishonoring the flag. The exhibitor who, as in this case, engages to join the artist in the commercial exploitation of the supposed expression of protest stands in no better position.
There appears to be one further question with respect to the First Amendment which the O’Brien court (391 U. S. 367, supra) was not especially concerned with, having found the draft card law based upon the valid reason that registrants should be required to retain their cards simply to facilitate administration of the act. This question concerns itself with the requirement in O’Brien, emphasized above, that the governmental interest be unrelated to the suppression of free expression.
The Halter case (205 U. S. 34, supra), at which any investigation of the validity of flag statutes must begin, was decided at a time before the Supreme Court was as concerned with First Amendment rights as it is today. Thus, the effect of Stromberg, *124 v. California (283 U. S. 359), the case cited by the majority in reversing the Street conviction (394 U. S. 576, supra), deserves consideration. Miss Strmmerg conducted a daily ceremony at a children’s summer camp during which the children raised the Soviet flag and recited a pledge of allegiance to it. The California statute made it a criminal offense to display a red flag (1) as a symbol of opposition to organized government, or (2) as-an invitation to anarchistic action, or (3) as an aid to propaganda of a seditious character. Miss Stromberg was convicted under the statute, although it' was not made clear which of the three criteria were involved in the breach. The court reversed on the ground that if defendant was convicted for flying the flag as a symbol of opposition, her First Amendment right to freedom of expression had been breached.
However, the statutes prohibiting certain kinds of exhibition of foreign flags, and statutes requiring the salute to our flag (cf. Board of Educ. v. Barnette, 319 U. S. 624) are clearly designed for no other purpose than communicative suppression whereas a flag desecration statute is aimed at keeping the public peace. While it is true that violations of the flag desecration statute will probably not occur apart from the expression of an idea, the prime reason for the statute was not to insure suppression of -such ideas, but rather to insure preservation of the public peace. The Halter case (205 U. S. 34, supra) still expresses the law as .rephrased in Street (20 N Y 2d 231, 236, supra), where it is stated: “ In any event, whatever motivated the Legislature to act, the statutory purpose is clear — it is to prevent a breach of the peace.” Some enlightenment may also be gained from the implication to be drawn from the Stromberg case (283 U. S. 359, supra) that had defendant’s conviction rested specifically on either or both of the statutory prohibitions relating to anarchistic or seditious actions, it might have been upheld. We thus conclude that the statute before us does not breach the O ’Brien requirement (391 U. S. 367, 377, supra) that the governmental interest served by it must be unrelated to the suppression of free -expression; and we affirm the lower court’s conclusion that the legitimate public interest which the statute is designed to protect was threatened by the violation of which defendant was convicted.
*125 Appellant’s additional contentions are insubstantial and may be dealt with summarily. The statute is not unconstitutionally vague; .and at least two of the “ constructions ” clearly cast the flag into dishonor. (Hoffman v. United States, 256 A. 2d. 567, supra; People v. Cowgill, 78 Cal. Rptr. 853, app dsmd. 396, U. S. 371, supra.)
Another argument is addressed to the factor of intent; but even if we assume that defendant had an honest political intent in exhibiting these constructions, or that he had no intent at all, that element is not essential to a conviction of violating a statute which is malum prohibitum. (People v. Werner, 174 N. Y. 132, 134; People v. Kibler, 106 N. Y. 321, 322-323.)
No less tenuous is appellant’s claim of denial of equal protection, predicated on the provision exempting from the operation of the statute ‘ ‘ a certificate, diploma, warrant, or commission of appointment to office, ornamental picture, article of jewelry, stationery * * * or newspaper or periodical, on any of which shall be printed * * said flag * * * disconnected and apart from any advertisement ” (former Penal Law, § 1425, subd. 16; emphasis supplied); and equally insubstantial is his contention based on the grammatical imperfection apparent in paragraph d of subdivision 16, it being clear beyond dispute that “ flag ” is the intended object, as it is the explicit object of every other act inhibited by the statute.
The judgment should be affirmed.

. The allegations, in full, were that “ the defendant did have on public display and for public viewing, the flag of the United States of America, in the following manner; 1—in the form of a male sexual organ, protruding from the body of form, in the anterior portion of the body of the form and depicting the erected male penis, protruding from a form of a cross. 2—the flag of the United States of America, wrapped in a chained bundle. 3 —■ The standard of the United States on the form of an alleged elephant. 4—The Union of the flag of the United States of America, depicted in the form of an octupus [sic]. 5 — The American flag attached to a gas meter. 6 — The American flag wrapped around a bundle attached to a two wheeled vehicle. 7 — The American flag in the form of a body, hanging from a yellow noose.”

. The “ construction ” was described in the majority opinion of the Criminal Court as “in the form of a large cross with a bishop’s mitre on the headpiece, the arms wrapped in ecclesiastical flags and an erect penis wrapped in an American flag protruding from the vertical standard.” (53 Misc 2d 718.)

. Thus, Mr. Justice Harlan, writing for the majority, said: “ [W]e reiterate that we have no occasion to pass upon the validity of this conviction insofar as it was sustained by the state courts on the basis that Street could be punished for his burning of the flag, even though the burning was an act of protest. Nor do we pereieve any basis for our Brother White’s fears that our decision today may be taken to require reversal whenever a defendant is convicted for burning a flag in protest, following a trial at which his words have been introduced to prove some element of that offense.” (Street v. New York, 394 U. S. 576, 594.)

. The salient points of dissent may be quoted as follows: Chief Justice Warren : “ Since I am satisfied that the constitutionality of appellant’s conduct should be resolved in this case and am convinced that this conduct can be criminally punished, I dissent.” Mr. Justice Black : “ The talking that was done took place ‘ as an integral part of conduct in violation of a valid criminal statute ’ against burning the American flag in public. I would therefore affirm • this conviction.” Mr. Justice White : “ For myself, without the benefit of the majority’s thinking if it were to find flag burning protected by the First Amendment, I would sustain such a conviction.” Mr. Justice Fortas : “ Protest does not exonerate lawlessness. And the prohibition against flag burning on the public thoroughfare being valid, the misdemeanor is not excused merely because it is an act of flamboyant protest.” (394 U. S. 576, 605-617.)