**UNITED STATES ex rel. Stephen RADICH, Petitioner-Appellant,**

v.

**The CRIMINAL COURT OF the CITY OF NEW YORK et al., Respondents-Appellees.**

**No. 584, Docket 71-2185.**

United States Court of Appeals, Second Circuit.

Argued March 24, 1972.

Decided April 26, 1972.

Shirley Fingerhood, New York City (Richard G. Green, Burt Neuborne, Melvin L. Wulf, Lawrence G. Sager, New York City, on the brief), for petitioner-appellant.

Maria L. Marcus, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for respondents-appellees.

Before HAYS, MANSFIELD and MULLIGAN, Circuit Judges.

MANSFIELD, Circuit Judge:

This appeal raises the interesting question, unlikely to recur, of whether an affirmance of a state court conviction by an equally divided vote of the United States Supreme Court bars the person convicted from later obtaining habeas corpus relief on constitutional grounds that were urged by him in his appeal to the Supreme Court. We hold that it does not and remand the petition for consideration on the merits.

On May 5, 1967, Stephen Radich was convicted in the Criminal Court of the City of New York of casting contempt on the American flag in violation of what was then § 1425(16) (d) of the N.Y. Penal Law, now recodified as § 136(d) of the N.Y. General Business Law (McKin-

ney's Consol.Laws c. 20, 1968),[1] by displaying several "constructions" in the window of his art gallery, one of which was described by the trial court as "in the form of a large cross with a bishop's mitre on the head-piece, the arms wrapped in ecclesiastical flags and an erect penis wrapped in an American flag protruding from the vertical standard." People v. Radich, 53 Misc.2d 717, 718, 279 N.Y.S.2d 680, 682 (1967) (2–1 decision). He was sentenced to pay a $500 fine or serve 60 days in the workhouse. On appeal in the State system his conviction was affirmed. People v. Radich, 57 Misc.2d 1082, 294 N.Y.S.2d 285 (App. T. 1st Dept. 1968) (*per curiam*), affd., 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E.2d 30 (1970) (5–2 decision). He then appealed to the Supreme Court of the United States, pursuant to 28 U.S.C. § 1257(2), arguing, as he had in the State courts, that his conviction violated the First and Fourteenth Amendments to the Federal Constitution.[2]

■ After oral argument on the merits the Supreme Court "affirmed by an equally divided Court." Radich v. New York, 401 U.S. 531, 91 S.Ct. 1217, 28 L. Ed.2d 287 (1971) (Mr. Justice Douglas did not participate). Promptly thereafter Radich sought relief by application for writ of habeas corpus in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 2241 et seq. There he advanced the same arguments previously made to the Supreme Court. In an unreported decision Judge Cannella denied relief on the ground that the affirmance of Radich's conviction by an equally divided Supreme Court constituted an actual adjudication by it on the merits of his Constitutional claims, which by statute, 28 U.S.C. § 2244(c),[3]

1. Section 136 of the N.Y.Gen.Bus.Law (McKinney 1968) provides in pertinent part:

   "Any person who

   \*　　\*　　\*　　\*　　\*

   "d. Shall publicly mutilate, deface, defile, or defy, trample upon, or cast contempt upon [the flag] either by words or act . . .
   Shall be guilty of a misdemeanor.

   "The words flag, standard, color, shield or ensign, as used in this section, shall include any flag, standard, color, shield or ensign, or any picture or representation, of either thereof, made of any substance, or represented on any substance, and of any size, evidently purporting to be, either of, said flag, standard, color, shield or ensign, of the United States of America, or of the state of New York, or a picture or a representation, of either thereof, upon which shall be shown the colors, the stars, and the stripes, in any number of either thereof, or by which the person seeing the same, without deliberation, may believe the same to represent the flag, colors, standard, shield or ensign of the United States of America or of the state of New York.

   "This section shall not apply to any act expressly permitted by the Statutes of the United States of America, or by the United States army or navy regulations, nor shall it be construed to apply to a certificate, diploma, warrant, or commission of appointment to office, ornamental picture, article of jewelry, stationery for use in private correspondence, or newspaper or periodical, on any of which shall be printed, painted or placed, said flag, standard, color, shield or ensign disconnected and apart from any advertisement."

2. He argues that "casting contempt" means to communicate an idea or attitude, that a statute banning such communication is unconstitutional, and that accordingly punishment for exhibition of sculpture on the ground that it is found to be contemptuous of the flag is prohibited by the First Amendment. He also contends that the statute under which he was convicted is overbroad and violates the Equal Protection Clause.

3. Section 2244(c) of Title 28 of the United States Code provides that:

   "(c) In a habeas corpus proceeding brought in behalf of a person in custody pursuant to the judgment of a State court, a prior judgment of the Supreme Court of the United States on an appeal or review by a writ of certiorari at the instance of the prisoner of the decision of such State court, *shall be conclusive as to all issues of fact or law* with respect to an asserted denial of a Federal right which constitutes ground for discharge in a habeas corpus proceeding, *actually adjudicated* by the Supreme Court therein, unless the appli-

is a bar to subsequent federal habeas corpus relief. A certificate of probable cause was thereupon issued and this appeal was pursued. Execution of Radich's sentence has been stayed.

Our consideration of the effect upon a state prisoner's habeas corpus petition of a Supreme Court affirmance of his conviction by an equally divided vote requires us once again to review the purpose of the Great Writ and the reasons for sometimes denying it on the ground that the constitutional issues have been determined on the merits in another federal proceeding. The writ's objective as embodied in the Constitution and the Judiciary Act, is to assure that when a person is detained unlawfully or in violation of his constitutional rights he will be afforded an independent determination by a federal court of the legality of his detention, even though the issue may already have been decided on the merits by a state tribunal. Congress could have left the enforcement through habeas corpus of federal constitutional rights governing the administration of justice in cases of state prisoners exclusively to the states, since state courts are under the same duty as federal courts to observe and to enforce those rights. Claflin v. Houseman, 93 U.S. 130, 136–137, 23 L. Ed. 833 (1876). But beginning with the enactment of the Judiciary Act of 1867, 14 Stat. 385, now 28 U.S.C. § 2241 (c) (3), it chose to give to federal courts the duty of entertaining and adjudicating writs of habeas corpus filed by those who had been convicted in state court proceedings.

■■■ Fundamental to the concept of the federal writ as thus authorized by Congress is that the petitioner will be accorded an adjudication by a federal court of the constitutional issues, provided he makes out a prima facie case, has ex-hausted his state remedies, and has not without sound reasons deliberately by-passed a controlling state court rule or procedure. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Henry v. Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). If he meets these conditions, a federal redetermination of the constitutional issues is mandated. Although a federal district judge may consider and give weight to the state court's adjudication, ". . . State adjudication of questions of law cannot, under the habeas corpus statute, be accepted as binding. *It is precisely these questions that the federal judge is commanded to decide.* . . . Although there is no need for the federal judge, if he could, to shut his eyes to the State consideration of such issues, no binding weight is to be attached to the State determination. The congressional requirement is greater. The State court cannot have the last say when it, though on fair consideration and what procedurally may be deemed fairness, may have misconceived a federal constitutional right." Brown v. Allen, 344 U.S. 443, 506, 508, 73 S. Ct. 397, 446, 97 L.Ed. 469 (1953) (concurring opinion of Justice Frankfurter) (emphasis supplied; fn. omitted). These principles were reaffirmed by the Supreme Court in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), where Chief Justice Warren, speaking for the court, stated:

"Although the district judge may, where the state court has reliably found the relevant facts, defer to the state court's findings of fact, he may not defer to its findings of law. It is the district judge's duty to apply the applicable federal law to the state court fact findings independently. The

cant for the writ of habeas corpus shall plead and the court shall find the existence of a material and controlling fact which did not appear in the record of the proceeding in the Supreme Court and the court shall further find that

the applicant for the writ of habeas corpus could not have caused such fact to appear in such record by the exercise of reasonable diligence." (Emphasis supplied).

state conclusions of law may not be given binding weight on habeas." (372 U.S. at 318, 83 S.Ct. at 760)

In guaranteeing that a state convict would have a federal determination of his constitutional claims on the merits Congress and the Supreme Court faced the necessity of developing principles of finality that would protect against successive applications to federal courts seeking to relitigate issues already decided by a federal tribunal. The problem was complicated by the fact that res judicata could not be invoked to preclude federal habeas relief.

"Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged. If 'government . . . [is] always [to] be accountable to the judiciary for a man's imprisonment,' Fay v. Noia, *supra,* [372 U.S.] at 402 [83 S. Ct. at page 829], access to the courts on habeas must not be thus impeded. The inapplicability of *res judicata* to habeas, then, is inherent in the very role and function of the writ." Sanders v. United States, 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963).

With a view to limiting the habeas petitioner to one bite on the merits in the federal court system, the Supreme Court developed equitable principles calling for discretionary denial of the writ where there had been a prior federal adjudication on the merits, e. g., Salinger v. Loisel, 265 U.S. 224, 230–231, 44 S.Ct. 519, 68 L.Ed. 989 (1924); Wong Doo v. United States, 265 U.S. 239, 240–241, 44 S.Ct. 524, 68 L.Ed. 999 (1924); Sanders v. United States, 373 U.S. 1, 8–10, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). In 1948 Congress, by its enactment of what is now 28 U.S.C. §

2244(a), codified these judicially-evolved principles. That statute, however, left open the question of whether a prior determination of the constitutional issues by the Supreme Court would bar habeas relief. Consistent with the overall scheme of allowing the petitioner to obtain one federal determination of those issues, Congress in 1966 enacted § 2244 (c), which provides that a prior judgment of the Supreme Court denying a federal right that would be a ground for discharge in a habeas corpus proceeding shall be conclusive as to those issues "actually adjudicated by the Supreme Court therein." It is this phrase which we are called upon to construe.

■ We have recited the foregoing background to shed light on the Congressional purpose behind § 2244(c). As we view it Congress, in enacting that supplement to the statute, did not intend it to deprive the habeas petitioner of his time-honored right to one federal adjudication on the merits merely because the constitutional issues had been *raised* in a prior proceeding before the Supreme Court. Only if the Supreme Court had actually *decided* the issues would its adjudication be final. Indeed the legislative history of the statute reveals that it was intended to help alleviate a growing burden on the lower federal courts imposed by frivolous habeas corpus petitions by state prisoners who had already had a full consideration and decision of their federal claims by the Supreme Court. See S.Rep. No. 1797, 89th Cong., 2d Sess. (1966). Affirmances by an equally divided court of a state court conviction can hardly have been in the contemplation of Congress; there have been so few in criminal cases that the number of habeas corpus petitions resulting from them cannot have been significant.[4]

4. Our research has disclosed only six affirmances by the Supreme Court from 1960 to date which possibly fall within this category. Of these, only two predated the passage of § 2244(c) in 1966. See Ohio ex rel. Eaton v. Price, 364 U.S. 263, 80 S.Ct. 1463, 4 L.Ed.2d 1708 (1960)

(affirming a denial of State habeas corpus); Slagle v. Ohio, 366 U.S. 259, 81 S.Ct. 1076, 6 L.Ed.2d 277 (1961); Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968); Anderson v. Johnson, 390 U.S. 456, 88 S.Ct. 1194, 20 L.Ed.2d 27 (1968) (affirming denial

In the light of the foregoing background we do not believe that an affirmance by an equally divided vote can fairly be construed as a holding that the constitutional issues have been "actually adjudicated by the Supreme Court" within the meaning of § 2244(c). We recognize that it would be safe to assume that unless the Court's division is based on an issue raised by it *sua sponte* each of its equally divided members has individually considered the constitutional issues. Because of the very fact of its equal division, however, the Court has been unable to reach a decision on the merits and there has therefore been no adjudication of them by it.

That Congress does not consider an affirmance by an equally divided court to be an actual adjudication of the merits is corroborated by its enactment of another provision of the Judicial Code, 28 U.S.C. § 2109, which provides that in certain instances when a case on review in the Supreme Court cannot be decided because of the absence of a quorum of qualified justices "the court shall enter its order affirming the judgment of the court from which the case was brought for review *with the same effect as upon affirmance by an equally divided court.*" (Emphasis added.) See e. g., Prichard v. United States, 339 U.S. 974, 70 S.Ct. 1029, 94 L.Ed. 1380 (1950). This provision was enacted to allow final disposition of litigation when "appellate review has been had and further review by the Supreme Court is impossible. . . ." H.R.Rep. No. 308, 80th Cong., 1st Sess. A176 (1947).

Rather than strand a case on dead center an equally divided Supreme Court, as the only sensible alternative, leaves in effect the decision of the court below, which is affirmed *ex necessitate.* However, the lower court's decision does not thereby become the decision of the Supreme Court. It remains a state court determination which, as we have noted

*supra,* "cannot . . . be accepted as binding." Brown v. Allen, *supra,* 344 U.S. at 506, 73 S.Ct. 397. Furthermore, it is a principle of ancient lineage that an opinion by an equally divided Supreme Court has no stare decisis effect and thus no value as precedent for the reason that "nothing is settled" by the Court, Ohio ex rel. Eaton v. Price, 364 U.S. 263, 264, 80 S.Ct. 1463, 4 L.Ed.2d 1708 (1960) (opinion of Mr. Justice Brennan); United States v. Pink, 315 U.S. 203, 216, 62 S.Ct. 552, 86 L.Ed. 796 (1942); Hertz v. Woodman, 218 U.S. 205, 213, 30 S.Ct. 621, 54 L.Ed. 1001 (1910); Durant v. Essex Co., 74 U.S. (7 Wall.) 107, 112, 19 L.Ed. 154 (1868); Etting v. Bank of United States, 24 U.S. (11 Wheat.) 59, 76, 6 L.Ed. 419 (1826); The Antelope, 23 U.S. (10 Wheat.) 66, 125, 6 L.Ed. 268 (1824). Absent an actual decision of the issues by the Supreme Court its equal division has no more legal significance for habeas purposes than denial of certiorari, which has never precluded subsequent collateral relief. Brown v. Allen, *supra,* 344 U.S. at 456, 458–459, 489–494, 73 S.Ct. 397 (1953).

In support of its contention that the Supreme Court's 4 to 4 affirmance constituted an "actual adjudication on the merits," the state relies principally upon the Supreme Court's venerable decision in Durant v. Essex Co., *supra,* 74 U.S. at 113, to the effect that such an affirmance is "conclusive and binding in every respect upon the parties", cited with approval in United States v. Pink, *supra.* See also Brown v. Aspden's Adm'rs, 55 U.S. (14 How.) 25, 28, 14 L.Ed. 311 (1853) (per Chief Justice Taney). That decision, however, merely reflects a judicially constructed rule of procedure designed to assure finality in civil litigation that does not involve release from custody. A petition for a writ of habeas corpus by a convicted criminal, being exempt from the doctrine

of federal habeas corpus to State prisoner); In re Spencer, 397 U.S. 817, 90 S.Ct. 1483, 25 L.Ed.2d 804 (1970) (apparently affirming State contempt conviction, whether confinement involved is unclear); and Radich v. New York, 401 U.S. 531, 91 S.Ct. 1217, 28 L.Ed.2d 287 (1971).

of res judicata, has always stood on a different footing. It is governed by the overriding principle that the doors of the federal courthouse must remain open to the petitioner seeking his liberty until he has obtained a decision on the merits by a federal court with respect to his federal constitutional claims.

"But conventional notions of finality in criminal litigation cannot be permitted to defeat the manifest federal policy that federal constitutional rights of personal liberty shall not be denied without the fullest opportunity for plenary federal judicial review." Fay v. Noia, *supra*, 372 U.S. at 424, 83 S.Ct. at 841 (1963).

In brief, since an equally divided affirmance by the Supreme Court does not in our view constitute an actual adjudication of the issues on the merits within the meaning of 28 U.S.C. § 2244(c), it does not bar a petition for habeas corpus. Accord, Biggers v. Neil, 448 F.2d 91, 97 (6th Cir. 1971), cert. granted, 405 U.S. 954, 92 S.Ct. 1167, 31 L.Ed.2d 230 (1972). Thus the decision of the district court is reversed and the case remanded for consideration of the merits of the petition. The stay of sentence will remain in effect pending its decision.

MULLIGAN, Circuit Judge (dissenting):

Stephen Radich, the petitioner herein, is an art dealer convicted in the Criminal Court of the City of New York of casting contempt on the American flag in violation of what was then § 1425 (16) (d) of the New York Penal Law by virtue of his display of "new art" forms described in the majority opinion. From the beginning Radich has been represented by able counsel of the American Civil Liberties Union who questioned the constitutionality of the statute under which he was convicted. He was found guilty in a two-to-one decision of the Criminal Court (People v. Radich, 53 Misc.2d 717, 279 N.Y.S.2d 680 (1968)) with opinions by both the majority and dissent. The Appellate Term

of the Supreme Court, First Department affirmed unanimously without opinion. (People v. Radich, 57 Misc.2d 1082, 294 N.Y.S.2d 285 (1968)). A divided New York Court of Appeals (5–2) affirmed the conviction with majority and dissenting opinions. People v. Radich, 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E. 2d 30 (1970). The Supreme Court granted review on October 19, 1970 to consider the same constitutional issues which are now presented to the Federal District Court. (See Radich v. New York, 39 U.S.L.W. 3161 [400 U.S. 864, 91 S.Ct. 99, 27 L.Ed.2d 102]). On February 22, 1971 the issues were argued before the Supreme Court and on March 24, 1971 the United States Supreme Court rendered its decision:

"PER CURIAM.

"The Judgment is affirmed by an equally divided Court.

"MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case."

Radich v. New York, 401 U.S. 531, 91 S.Ct. 1217, 28 L.Ed.2d 287. Although the Supreme Court said it affirmed the judgment of the New York Court of Appeals, the majority opinion here reaches the conclusion that the Court made no actual adjudication at all because a majority could not reach any decision on the merits and that petitioner, whose petition for rehearing was denied on May 7, 1971 (402 U.S. 989, 91 S.Ct. 1646, 29 L.Ed.2d 157), is now free to again urge these very issues in a *habeas corpus* petition in the United States District Court for the Southern District of New York. I cannot subscribe to this view.

Whatever the law before 1966, it is now evident that we are called upon to construe Title 28 U.S.C. § 2244(c), the purpose of which was "to provide a qualified application of the doctrine of *res judicata* . . . to proceedings on applications for *habeas corpus* by state prisoners." H.R.Rep. No. 1892, 89th

Cong., 2d Sess. 3, 8, 13 (1966).[1] The subsection which is set forth in full in footnote 3 of the majority opinion, in essence makes a prior judgment of the Supreme Court conclusive as to all issues of fact or law in a state prisoner's federal *habeas corpus* proceeding, where these issues have been actually adjudicated by the Supreme Court.[2]

Our inquiry therefore is what did the Congress intend by the phrase "actually adjudicated." The Senate Report which provides the legislative history of the subsection states: "This subsection is intended to give a conclusive presumption only to actual adjudications of federal rights by the Supreme Court, and *not to give such a presumption to mere denials of writs of certiorari.*" Sen.Rep. No. 1797, 89th Cong., 2d Sess., in 1966 U.S.Code, Cong. & Ad.News pp. 3663, 3664.[3] (Emphasis added)

The majority opinion takes the position that an affirmance of a state court judgment by an equally divided court has "no more legal significance for *habeas* purposes than denial of *certiorari,* which has never precluded subsequent collateral relief. Brown v. Allen, *supra,* 344 U.S. at 456, 458–459, 489–494, 73 S. Ct. 397 (1953)." Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953) does not deal with or even mention affirmances by an equally divided bench but rather is concerned with mere denials of writs of certiorari.[4] Moreover, Mr. Justice Frankfurter's reasoning in finding that a mere denial of a writ of certiorari by the Supreme Court in a state prisoner case did not bar a subsequent *habeas corpus* application is most illuminating. In his opinion for the court on this point he stated:

"These petitions for certiorari are rarely drawn by lawyers; some are almost unintelligible and certainly do not present a clear statement of issues necessary for our understanding, in view of the pressure of the

---

1. It is interesting to note that the only case in point, Biggers v. Neil, 448 F.2d 91 (6th Cir. 1971), cert. granted, 405 U.S. 954, 92 S.Ct. 1167, 31 L.Ed.2d 230 (1972) *does not discuss or even cite in either the* majority or dissenting opinions, the governing statute § 2244(c). The majority opinion is based upon pre-statutory case law evolving before the *res judicata* bar enacted by Congress in 1966. It is in accord with the majority here but in view of its failure to construe the statute, I cannot find it convincing and certainly not persuasive.

2. There is no question of fact here but rather legal issues of the constitutionality of § 1425(16) (a) of the Penal Law of New York under which the defendant was convicted. All of these issues were as pointed out above before the Supreme Court.

3. "It is clear that 'actually adjudicated' questions of law include *all* dispositions except denials of certiorari". Developments in the Law—Habeas Corpus, 83 Harv.L.Rev. 1038, 1152 (1970) (emphasis added and footnote omitted). See also 45 Texas L.Rev. 592, 595 n. 27 (1967).

4. It should be noted that § 2244(c) refers to a prior judgment of the Supreme Court "on an appeal or review by a writ of certiorari". The dismissal of a writ may nonetheless have *res judicata* effect if the circumstances reveal that the court has dismissed on the merits, see Duncan v. Carter, 299 F.2d 179 (9th Cir.), cert. denied, 370 U.S. 952, 82 S.Ct. 1602, 8 L.Ed.2d 818 (1962). In that case a defendant's criminal conviction had been affirmed by the California Supreme Court. The United States Supreme Court initially granted certiorari, but after oral argument on the merits, it dismissed the writ with a brief statement: "the totality of circumstances disclosed fails to support the substantial due process issues tendered in the petitions for certiorari. . . . ." Baldonado v. California, 366 U.S. 417, 81 S.Ct. 1355, 6 L.Ed.2d 380 (1961). The defendant then commenced a federal habeas corpus action, raising the same constitutional issues that she had placed before the Supreme Court. In affirming the district court's refusal to grant the writ, a panel of the Ninth Circuit concluded that the Supreme Court had "actually adjudicated" these claims and hence it was bound to follow that Court's decision. Although this case was decided prior to the enactment of § 2244 (c), were the same question to be presented today, habeas corpus relief would be barred under the present statute. Compare Miller v. Carter, 434 F.2d 824, 826 (9th Cir. 1970), cert. denied, 402 U.S. 972, 91 S.Ct. 1658, 29 L.Ed.2d 137 (1971).

Court's work. The certified records we have in the run of certiorari cases to assist understanding are almost unknown in this field. Indeed, the number of cases in which most of the papers necessary to prove what happened in the State proceedings are not filed is striking. Whether there has been an adjudication or simply a perfunctory denial of a claim below is rarely ascertainable. Seldom do we have enough on which to base a solid conclusion as to the adequacy of the State adjudication. Even if we are told something about a trial of the claims the applicant asserts, we almost never have a transcript of these proceedings to assist us in determining whether the trial was adequate. Equally unsatisfactory as a means of evaluating the State proceedings is the filing of opinions; in less than one-fourth of the cases is more than a perfunctory order of the State courts filed. We would have to have very different records and to alter our consideration of these cases radically if a denial could fairly be deemed to be an undisclosed decision on the merits. In a few cases the issues before the District Court had not even been raised here. In other cases, the emphasis put on the issues here differed considerably from that put on them in the District Courts. Alice could understand, but not I, how under such circumstances a district judge could assume if he is so minded, that we 'decided' the question now presented to him." Brown v. Allen, *supra*, 344 U.S. at 493–494, 73 S.Ct. at 439 (footnotes omitted)

None of the obfuscations and inadequacies surrounding the denial of the writ of certiorari which led Mr. Justice Frankfurter to deny them significance for habeas purposes are present here. Mr. Radich is not an illiterate inmate of a New York State prison—he hasn't spent any time in custody since his 1968 conviction. He has always been represented by competent counsel who have clearly presented his constitutional arguments to the State courts and the United States Supreme Court. There was an ample record from the State courts with written opinions articulating clearly the majority and dissenting positions. There has been nothing peremptory or perfunctory in the disposition by the Supreme Court which heard argument on the merits and which voted on the merits. Radich even petitioned for reargument and lost. He has had his day in the Supreme Court and more. He failed to persuade a majority of the justices that the statute was unconstitutional and therefore lost.[5]

There is nothing startling in the proposition that an even vote constitutes an affirmance of the judgment appealed. This has long been held and never challenged. While a 4–4 affirmance does not become a binding precedent, the law of the case has been fixed. Thus the Supreme Court held in Durant v. Essex Co., 74 U.S. (7 Wall.) 107, 113, 19 L.Ed. 154 (1868) "The judgment is as conclusive and binding upon the parties as if rendered upon the concurrence of all the judges upon every question involved in the case." In United States v. Pink, 315 U.S. 203, 216, 62 S.Ct. 552, 86 L.Ed. 796 (1942) Mr. Justice Douglas stated that a 4–4 affirmance is "conclusive and binding upon the parties as respects that controversy." In Hertz v. Woodman, 218 U.S. 205, at pages 213–214, 30 S.Ct. 621, at page 623, 54 L.Ed. 1001 (1910) the Supreme Court said:

"Under the precedents of this court, and, as seems justified by reason as well as by authority, an affirmance by an equally divided court is, as between the parties, a conclusive determination and *adjudication* of the mat-

5. Fay v. Noia, 372 U.S. 391, 424, 83 S.Ct. 822, 841, 9 L.Ed.2d 837 (1963) relied upon by the majority requires that federal constitutional rights of personal liberty "shall not be denied without the fullest opportunity for plenary federal judicial review." The record before us establishes in my view that the petitioner here assuredly had that opportunity.

ter adjudged; but the principles of law involved not having been agreed upon by a majority of the court sitting prevents the case from becoming an authority for the determination *of other cases,* either in this or in inferior courts."[6] (Emphasis added)

The majority's argument that since there was equal division there was no decision on the merits and therefore no adjudication under the statute is not only without authority but is of course *petitio principii.* The fact that no opinion is written is obviously unimportant. If the court had simply stated that the judgment is affirmed 5 to 3 that would constitute an adjudication by the Supreme Court. Here the court said "The judgment is affirmed by an equally divided Court." This is an adjudication. The court said so and I believe we should take it at its word.

---

6. Mr. Justice Brennan's statement in Ohio ex rel. Eaton v. Price, 364 U.S. 263, 264, 80 S.Ct. 1463, 4 L.Ed.2d 1708 (1960) that "nothing is settled" by an equally divided court, as I read it, refers not to its lack of finality as to the parties before the court, but rather that it does not settle the law and has no precedential value. It is an adjudication *ex necessitate sed ex lege.*