The Rev. Charles STRAUT, the Rev. Ivan Backer, and Dorothy Mock, on their own Behalf and on Behalf of all persons similarly situated, Plaintiffs,

v.

Guy W. CALISSI, as County Prosecutor of Bergen County, New Jersey, Defendant.

Civ. A. No. 863–67.

United States District Court
D. New Jersey.

Dec. 18, 1968.

Frank Askin, Newark, N. J., for plaintiffs.

Harold N. Springstead, Asst. Prosecutor of Bergen County, for defendant.

## OPINION

Before FORMAN, Circuit Judge, AUGELLI, Chief District Judge, and SHAW, District Judge.

FORMAN, Circuit Judge.

Plaintiffs in this action seek a judgment declaring unconstitutional a New Jersey sedition statute, N.J.Rev.Stat. § 2 A:148–22.[1] Pursuant to 28 U.S.C. §§ 2281 and 2284 a three-judge court was convened to hear argument and pass upon the constitutional issues raised. On March 12, 1968, counsel filed with the court a stipulation of fact and several affidavits, upon which trial was to proceed. There being no material facts in dispute, no live testimony or other evidence was offered.

Plaintiffs, suing on behalf of themselves and "all other persons similarly situated," are active members of various organizations opposed to this country's involvement in the conflict in Vietnam and have engaged in many activities demonstrating such opposition. Plaintiff Straut is an ordained minister and pastor of Christ Methodist Church in East Rutherford, New Jersey. According to both the complaint and the stipulation he has given many public speeches and sermons in which he has described the war as unjust and violative of the tenets of Christianity, as well as being inconsistent with the Constitution, the United Nations Charter and the Nuremberg judgments. He has participated in several activities designed to discourage others from enlisting in the armed forces and to dissuade them from assisting the United States in its participation in the war.[2] In addition, Reverend Straut is a member of the National Emergency Committee of Clergy and Laymen Concerned About Vietnam and a representative of the Bergen County Peace Council.

Plaintiff Backer, also an ordained minister, is vicar of Grace Episcopal Chapel in East Rutherford and is a member of the organizations mentioned above.[3] Prior to May 25, 1967, he was an outspoken critic of the United States' role in Vietnam and participated in activities designed to discourage enlistment in the armed forces and assistance in prosecuting the war. As an example of his beliefs and activities, he took a course offered by the American Friends Service Committee in order to qualify as a counselor of those who may have conscientious objection to participating in all wars, or the Vietnam war in particular.

Plaintiff Mock, a resident of Bergen County, is a pacifist and a member of various peace organizations.[4] She has written letters to newspapers and given talks advising young men not to cooperate with the war in Vietnam and with wars in general, and has explained to

1. Plaintiffs in their complaint also prayed for injunctive relief, but on oral argument counsel submitted that if a declaratory judgment were granted, the prayer for injunction would not be pressed.

2. For instance, on February 8, 9 and 10, 1967, Reverend Straut participated in a three-day fast at the Unitarian Church in Paramus, New Jersey, in order to encourage religious opposition to the war by persuading young men not to enlist in the armed forces. On June 12, 1967, he distributed leaflets at East Rutherford High School, urging students to attend a meeting sponsored by the Bergen County Peace Council, in order to again discourage enlistment in the armed forces and encourage conscientious objection.

3. Reverend Backer's affidavit indicates that he is also a member of the Board of Directors of the New Jersey State Council of Americans for Democratic Action and chairman of the Social Action and Education Committee of the Bergen County Council of Churches.

4. The complaint states that Mrs. Mock is an active member of the Religious Society of Friends and its Peace and Social Concerns Committee, the Fellowship of Reconciliation, the Women's International League for Peace and Freedom, the Executive Committee of the Committee for Non-Violent Action and the Bergen County Peace Council.

them various alternatives to military service, including going to jail.

Defendant Calissi is the Prosecutor for Bergen County, New Jersey, and the state official charged with enforcement of the statute here challenged in Bergen County. That statute, N.J.Rev.Stat. § 2 A:148–22, provides:

"Any person who:

a. Prints, publishes or circulates any book, newspaper, pamphlet, or written or printed matter that advocates or attempts to advocate that persons should not enlist in any of the armed forces of the United States, or of this state, or

b. Advocates or teaches, by word of mouth or otherwise, in any public place or at any meeting where more than 5 persons are assembled, that any person should not enlist in any of the armed forces of the United States or of this state; or

c. Advocates or teaches that the citizens of this state should not aid, abet or assist the United States in prosecuting or carrying on war with the enemies of the United States—

Is guilty of a high misdemeanor." N.J.Rev.Stat. § 2A:85–6 provides that punishment for a high misdemeanor shall be a fine of not more than $2,000, or imprisonment for not more than 7 years, or both.

On May 25, 1967, defendant delivered a speech before the Bergen County Grand Jurors' Association. The speech was reported the following day on the front page of The Record, a leading Bergen County newspaper, under the headline "War Defiers Can Be Jailed." [5] The article revealed that Mr. Calissi had recently discovered "by accident" the existence of the New Jersey sedition statute set out above, and that it was possible that "every one of Bergen County's thousands of residents who march or even just speak out against the American military action in Vietnam" could be prosecuted under its terms. The newspaper account also reported that "[w]hen the prosecutor read the law to the group, one juror stated gleefully 'We've got them coming and going.' Calissi nodded in agreement." The day after this article appeared, May 27, defendant was inter-

5. "WAR DEFIERS CAN BE JAILED
by Brian A. McLaughlin
Staff Writer

"If Stokely Carmichael should start a chant of 'Hell, no! We ain't goin'!' at a Vietnam peace rally in Bergen County—or anywhere else in New Jersey—he could be slapped with a $2,000 fine, or a 7-year jail term, or both.

"So could the people chanting along with him. So could the man carrying the sign that says: 'Yankee Stay Home', or handing out a handbill that carries the same message. So could any one advocating the avoidance of military service in spoken or printed word.

"And so—just possibly—could every one of Bergen County's thousands of residents who march or even just speak out against the American military action in Vietnam.

"They could be prosecuted under a little-known and rarely invoked State law unearthed by County Prosecutor Guy W. Calissi, which makes it a high misdemeanor in New Jersey to advocate in any way that one should not enlist in the armed forces—or to teach that one should not assist the United States in a war effort.

"Calissi made the law's existence known for the first time last night at a meeting of the Grand Jurors Association of Bergen County. He stated that he had not realized it existed and had discovered it recently by accident.

"When the prosecutor read the law to the group, one juror stated gleefully: 'We've got them coming and going.' Calissi nodded in agreement.

"The law is a part of the New Jersey Statutes covering insurrection and sedition. The first two sections cover any person who prints, publishes or circulates any book, newspaper, pamphlet, or written or printed matter, or advocates orally at any gathering of five or more persons, that one should not enlist in any of the armed forces.

"By extension, these sections of the law would also cover any one advocating the avoidance of the draft or outright refusal to serve in the armed forces—and there is precedent in New Jersey for ruling anti-draft or anti-draft board statements as sedition."

\* \* \* \* \*

viewed on radio station WINS in New York and stated that it was his duty to enforce this statute and he would do so if violations were brought to his attention. On May 31, 1967, The Record published a statement issued by Mr. Calissi the previous day, in which he asserted that upon receiving complaints, he would be compelled to prosecute anti-draft advocates under the statute.

Plaintiffs contend that the existence of N.J.Rev.Stat. 2A:148–22, coupled with defendant's threats to enforce it, have the immediate purpose and effect of intimidating them and thousands of others, and of deterring them from the exercise of their First Amendment rights of freedom of speech, religious belief, press and association. It is asserted that the statute is overly broad and vague "and its overbroad sweep has a chilling effect upon the exercise of rights guaranteed to all citizens by the First and Fourteenth Amendments." In addition, plaintiffs argue that the statute violates the Supremacy Clause of the Constitution in that it legislates in an area preempted by Congress. Jurisdiction over the complaint is said to arise under 28 U.S.C. §§ 1331, 1343, 2201, 2202, 2281, 2284, 42 U.S.C. § 1983; and under the Constitution of the United States, particularly Article VI, Paragraph 2 and the First, Ninth and Fourteenth Amendments.

■ Although not raised as an issue by the parties it is necessary for this court to determine whether it has jurisdiction over the subject matter in dispute. The question which arises from the record focuses on the existence of a justiciable "case or controversy" within the meaning of Article III of the Constitution,[6] and thus it must be ascertained whether the requisite immediacy of harm and adversity of legal interests exist in this case. Upon first inquiry, it would appear that this question should be answered in the negative. The New Jersey statute has been on the books for fifty years, and during that period there has been only one reported prosecution under its terms.[7] In addition, defendant Calissi has apparently never specifically centered his threats of prosecution on these plaintiffs. Nevertheless, defendant has, on three separate occasions closely related in time, either specifically stated or strongly implied that he would prosecute under this statute, and these threats were given a substantial degree of credibility and notoriety by the somewhat sensationalized newspaper coverage and the radio interview. Of equal significance is the fact that defendant has taken the initiative in publicizing the existence of the long dormant statute, emphasizing that he had only recently discovered it "by accident," with the implied suggestion that it was now about to be revitalized.

■ The importance of the constitutional right here being asserted, however, overrides the substantiality or insubstantiality of the threats in this case. Plaintiffs urge, and the stipulation shows,[8] that the existence of this New Jersey sedition statute, along with defendant's threats to enforce it, have created an impermissible "chilling effect" on the exercise of their fundamental First Amendment rights, in particular, their right to actively engage in dissent from

---

6. See Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911).

7. In State v. De Fillipis, 15 N.J.Super. 7, 83 A.2d 16 (App.Div.1951), certification denied, 10 N.J. 21, 89 A.2d 306 (1952), N.J.Rev.Stat. 2A:148–22 was upheld by the Appellate Division as a proper exercise of police power.

8. "Not only plaintiffs but also those with whom they are associated have carried on their expressional activities under constant fear of arrest and prosecution as a result of the defendant Prosecutor's statements to enforce this statute against opponents of the government's Vietnam policies. * * * Their efforts to convince others who share their antipathy to the United States' activities in Vietnam and to the government's military recruitment to associate with them in opposing that activity have been likewise seriously impeded as a result of the defendant Prosecutor's statements." Stipulation at 4–5.

and encourage opposition to the involvement of the United States in the war in Vietnam. They contend that the statute is overly broad in that it proscribes activity protected under the First and Fourteenth Amendments. In such circumstances what the Supreme Court said in the landmark case of Dombrowski v. Pfister[9] is significant:

> "Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser."

*Dombrowski* and cases subsequently decided in the federal courts[10] have considerably expanded the concept of federal jurisdiction in the First Amendment area. These decisions have rested on the consideration that the mere threat of prosecution under a statute alleged to be overly broad in the First Amendment area can effect a deterrent to the exercise of protected expression sufficient to justify the intervention of the federal courts. Where, as here, suit is brought by plaintiffs whose activities apparently fall within the statute's broad prohibitions, federal jurisdiction exists.

 Also, before considering the merits of plaintiffs' First Amendment challenge, it must be determined whether the circumstances of the instant case

justify the granting of declaratory relief. Defendant rather summarily raises the question of federal abstention, contending that the issues here posed have never been passed upon by the New Jersey Supreme Court, and that plaintiffs have available a remedy under New Jersey's declaratory judgment act.[11] However, the concept that this court should abstain from adjudicating the federal constitutional rights here claimed, in order to permit the New Jersey courts to make the initial determination, is clearly inappropriate in the light of the recent Supreme Court pronouncements in Zwickler v. Koota.[12] The Court there, in reasserting the primary role of the federal courts in deciding questions of federal law, held the abstention doctrine inappropriate where a statute is attacked on its face as being repugnant to the First Amendment: [13]

> "In such case to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." [14]

In such circumstances, it is the *duty* of the district court to pass upon the merits of plaintiffs' constitutional claim.

The major thrust of defendant's response to plaintiffs' First Amendment challenge is that this court is compelled by the decision of the Supreme Court in Gilbert v. Minnesota[15] to find N.J.Rev.

---

9. 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965).

10. See, e. g., United Steelworkers of America (AFL–CIO) v. Bagwell, 383 F.2d 492 (4th Cir. 1967); Harris v. Younger, 281 F.Supp. 507 (C.D.Cal.1968); Landry v. Daley, 280 F.Supp. 938 (N.D.Ill.1968); Reed Enterprises v. Clark, 278 F.Supp. 372 (D.D.C.1967), aff'd, 390 U.S. 457, 88 S.Ct. 1196, 20 L.Ed.2d 28 (1968); Carmichael v. Allen, 267 F.Supp. 985 (N.D.Ga.1967); Heckler v. Shepard, 243 F.Supp. 841 (D.Idaho 1965).

11. N.J.S.A. §§ 2A:16–50 to –62.

12. 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

13. The Court noted: "We have frequently emphasized that abstention is not to be ordered unless the state statute is of an uncertain nature, and is obviously susceptible of a limiting construction." 389 U.S. at 251, 88 S.Ct. at 397 n. 14. While one of plaintiffs' contentions in the instant case is that the New Jersey statute is unduly vague, it is clear that the gravamen of their complaint is that the statute is unconstitutional on its face due to overbreadth in the area of the First Amendment.

14. 389 U.S. at 252, 88 S.Ct. at 397.

15. 254 U.S. 325, 41 S.Ct. 125, 65 L.Ed. 287. (1920).

Stat. § 2A:148–22 constitutional.[16] The petitioner in *Gilbert* had been indicted under a Minnesota statute substantially similar to the one at bar.[17] In upholding the statute and rejecting petitioner's First Amendment arguments, the Court held that freedom of speech "is not absolute, it is subject to restriction and limitation."[18] The United States then being at war with Germany, and attempting to recruit an army, the state's police power was considered to have been properly invoked to punish a speech the natural effects of which were to discourage enlistment and provoke a hostile reaction on the part of the speaker's auditors.[19]

It is defendant's contention that since *Gilbert* has never been specifically overruled, *stare decisis* dictates that the decision must here be followed. Such an approach, however, would not be in keeping with the reality of the present context. In the first place, the Supreme Court has cited *Gilbert* only five times[20] since the case was decided forty-eight years ago, and has discussed it only once, that being in a non-First Amendment context. It is thus more than merely arguable that the Court has *sub silentio* overruled the *Gilbert* holding. More important, however, has been the erosion of the constitutional precepts upon which the *Gilbert* decision rested. The Minnesota statute there, like the New Jersey statute here, proscribed the advocacy or teaching, by word of mouth at any place

---

16. On oral argument defendant urged that the statute should be construed "narrowly" to apply only in times of actual, declared war. Whatever the merit of such a contention in the abstract, it is clear that defendant's cause is not aided by any such theory: the one reported case decided under N.J.Rev.Stat. § 2A:148–22 (see note 7 supra) arose during the Korean hostilities, where there was no official declaration of war. Moreover, defendant's present threats to enforce the statute would appear to contradict this argument, for again there has been no formal declaration of war with respect to Vietnam.

17. The pertinent parts of the Minnesota statute read:

"Sec. 2. Speaking by word of mouth against enlistment unlawful.—It shall be unlawful for any person in any public place, or at any meeting where more than five persons are assembled, to advocate or teach by word of mouth or otherwise that men should not enlist in the military or naval forces of the United States or the state of Minnesota.

"Sec. 3. Teaching or advocating by written or printed matters against enlistment unlawful.—It shall be unlawful for any person to teach or advocate by any written or printed matter whatsoever, or by oral speech, that the citizens of this state should not aid or assist the United States in prosecuting or carrying on war with the public enemies of the United States." Ch. 463, Laws of 1917, sec. 8521.

18. 254 U.S. at 332, 41 S.Ct. at 125.

19. The Court quoted Gilbert as having said:

"We are going over to Europe to make the world safe for democracy, but I tell you we had better make America safe for democracy first. You say, what is the matter with our democracy. I tell you what is the matter with it: Have you had anything to say as to who should be President? * * * Have you had anything to say as to whether we would go into this war? You know you have not. If this is such a good democracy, for Heaven's sake why should we not vote on conscription of men? We were stampeded into this war by newspaper rot to pull England's chestnuts out of the fire for her. I tell you if they conscripted wealth like they have conscripted men, this war would not last over forty-eight hours * * *." 254 U.S. at 327, 41 S.Ct. at 125.

20. Pennsylvania v. Nelson, 350 U.S. 497, 500–501, 76 S.Ct. 477, 100 L.Ed. 640 (1956) (discussion of federal preemption; found distinguishable); Dennis v. United States, 341 U.S. 494, 505 n. 4, 71 S.Ct. 857, 95 L.Ed. 1137 (1951) (Cf. cite as an "important free speech" case); Hines v. Davidowitz, 312 U.S. 52, 67 n. 18, 61 S.Ct. 399, 85 L.Ed. 581 (1941) (distinguished as inapposite on preemption issue); Herndon v. Lowry, 301 U.S. 242, 256 n. 10, 57 S.Ct. 732, 81 L.Ed. 1066 (1937) (cited in string citation for "clear and present danger" test); United States v. Lanza, 260 U.S. 377, 384, 43 S.Ct. 141, 67 L.Ed. 314 (1922) (part of string citation for proposition that the same act may be an offense against both state and federal governments).

where more than five persons were assembled, or by any printed matter, that men should not enlist in the armed forces. The *Gilbert* Court failed to distinguish between advocacy of legal and illegal aims, or between that advocacy which amounts to the teaching of abstract doctrine and that which is aimed at stirring people to immediate, unlawful action. Even were this court to assume that the New Jersey statute covers only advocacy of illegal action, an assumption which would be totally unwarranted, there is no delineation on the face of the statute between abstract doctrine and incitement. On the contrary, the use of the word "teaches" in section b clearly indicates that the statute covers speech which could not be considered to be criminal incitement.

■ In addition, any assumption that the statute covers only advocacy of illegal action must be discarded, for its terms prohibit the advocacy of non-enlistment in the armed forces. Since it is certainly not a crime to choose not to volunteer one's services to the military, the statute prohibits the urging of lawful action. It is thus made a crime for a person to counsel five or more other persons that enlistment in the Army would not be in their best interests, and that immediate pursuit of another career would be more rewarding or serviceable.[21] Even were

this kind of urging to reach the stage of "vigorous advocacy," it must be remembered that "abstract discussion is not the only species of communication which the Constitution protects; the First Amendment also protects vigorous advocacy, *certainly of lawful ends,* against governmental intrusion." [22]

■ Plaintiffs' activities, at least insofar as they are designed to encourage young people not to enlist in the service, fall squarely within the statute's coverage. To the extent that they are revealed in the complaint, affidavits and stipulation, these activities are protected under the First Amendment, for as the Supreme Court observed in Thomas v. Collins: [23]

"[T]he protection they [the Framers] sought was not solely for persons in intellectual pursuits. It extends to more than abstract discussion, unrelated to action. The First Amendment is a charter for government, not for an institution of learning. 'Free trade in ideas' means free trade in the opportunity to persuade to action, not merely to describe facts."

■ In light of more recent Supreme Court decisions[24] which take such great pains to make the kinds of distinctions, vital in the First Amendment area, ignored in this statute, this court is com-

21. As Justice Brandeis stated in his dissenting opinion in *Gilbert:*
"The prohibition is made to apply whatever the motive, the intention, or the purpose of him who teaches. It applies alike to the preacher in the pulpit, the professor at the university, the speaker at a political meeting, the lecturer at a society or club gathering. Whatever the nature of the meeting and whether it be public or private, the prohibition is absolute, if five persons are assembled. The reason given by the speaker for advising against enlistment is immaterial. Young men considering whether they should enter these services as a means of earning a livelihood or as a career, may not be told that, in the opinion of the speaker, they can serve their country and themselves better by entering the civil service of state or nation, or by studying for one of the professions, or by en-

gaging in the transportation service, or in farming or in business, or by becoming a workman in some productive industry. Although conditions may exist in the army or the navy which are undermining efficiency, which tend to demoralize those who enter the service and would render futile their best efforts, the state forbids citizens of the United States to advocate that men should not enlist until existing abuses or defects are remedied." 254 U.S. at 335, 41 S.Ct. at 128.

22. NAACP v. Button, 371 U.S. 415, 429, 83 S.Ct. 328, 336, 9 L.Ed.2d 405 (1963) (Emphasis added.)

23. 323 U.S. 516, 537, 65 S.Ct. 315, 326, 89 L.Ed. 430 (1945).

24. See, e. g., Kingsley International Pictures Corp. v. Regents, 360 U.S. 684,

pelled to hold N.J.Rev.Stat. § 2A:148–22 unconstitutional on its face as being overly broad in its proscription of constitutionally protected expression.[25] It follows that plaintiffs are entitled to a declaratory judgment to that effect. This disposition of the case makes it unnecessary to pass upon the other constitutional issues raised by the plaintiffs.

688–689, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959); Yates v. United States, 354 U.S. 298, 318–320, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); Cantwell v. Connecticut, 310 U.S. 296, 308, 310, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

25. See, e. g., Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116 (1965); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328 (1963); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).