**LONG ISLAND VIETNAM MORATOR-IUM COMMITTEE, Nassau Council of Women Strike for Peace, Barbara Spadanuta, Mae Neuberger, Rhoda Seidel, and Barbara Shack, Plaintiffs,**

v.

**William CAHN, District Attorney, Nassau County, and Eugene Nickerson, County Executive, Nassau County, Defendants.**

No. 70–Civ.–56.

United States District Court,
E. D. New York.

June 22, 1970.

Travia, J., concurred in part and dissented in part and filed an opinion.

Burt Neuborne, New York City (Carl Binder, Long Island, New York Civil

Liberties Union, New York City, of counsel), for plaintiffs.

Steven M. Hochberg, New York City (Louis J. Lefkowitz, Atty. Gen., Albany, N. Y., of counsel), for defendants.

Before MOORE, Circuit Judge, and BARTELS and TRAVIA, District Judges.

MOORE, Circuit Judge.

The plaintiffs in this action, the Nassau Council of Women Strike for Peace, the Long Island Vietnam Moratorium Committee and four individuals belonging to or in sympathy with the organizational plaintiffs have followed for some time a course of concerted opposition to the United States military presence in Viet-Nam through a variety of peaceful public protest activities. A part of their campaign has been the distribution of emblems or buttons to be displayed on the clothing and of decals designed for display in automobile windows. The decal (see appendix) and button are of the same design: a black circle, within which are several horizontal alternating red and white stripes which cover three of the four quadrants of the design. In the upper left quadrant are seven white stars on a blue field. In the center of the circle is a vertical black line extending from top to bottom and from the center point of the line are two radial black lines running at 45-degree angles to the rim of the circle. Thus the design gives the general impression of a black circle and a geometric design (slightly resembling an inverted trident) with a red, white and blue background which might be taken for a section of an American flag. On oral argument it was represented by plaintiffs that the black circle and trident is the offical insignia of the Committee for a Sane Nuclear Policy and that it is generally recognized as the "peace symbol."

On January 15, 1970, the defendant William Cahn, District Attorney of the County of Nassau, New York, called a press conference for the purpose of announcing that, beginning the following Monday, he would, on the complaint of any person, criminally prosecute anyone wearing or displaying the emblems described above, which had been widely distributed by plaintiffs. In his announcement, Cahn declared that these and similar emblems using recognizable representations of the American flag in conjunction with expressions of political or para-political ideology are in violation of section 136(a) of the New York General Business Law (McKinney's Consol. Laws, c. 20). That subsection makes it a misdemeanor, punishable by up to a year in jail or a fine of $1,000 for any person to

> * * * [i]n any manner, for exhibition or display, * * * place or cause to be placed, any word, figure, mark, picture, design, drawing, or any advertisement, of any nature upon any flag, standard, color, shield or ensign of the United States of America, or the state of New York, or * * * expose or cause to be exposed to public view any such flag, standard, color, shield or ensign, upon which * * * shall have been printed, painted or otherwise placed, or to which shall be attached, appended, affixed or annexed, any word, figure, mark, picture, design, or drawing, or any advertisement of any nature, * * *

Other subsections of the statute are specifically directed at physical uses of the flag, as defined in the section, which tend to "cast contempt upon" the American flag.[1] The statute also prohibits raffling or placing in pawn any such flag or representation thereof,[2] as well as public use of it as a receptacle for depositing or collecting money.[3]

1. New York General Business Law (McKinney 1968) §§ 136(d) and 136(f).

2. § 136(e).

3. § 136(g).

Immediately upon hearing the District Attorney's announcement, plaintiffs requested and obtained a federal court order requiring defendant Cahn to show cause why he should not be enjoined from carrying out his announced intention to prosecute those wearing plaintiffs' buttons and from further threatening such prosecution. Upon motion of the plaintiffs for the convocation of a three-judge district court pursuant to 28 U.S.C. §§ 2281 and 2284, this court was appointed to hear and determine the issues.

The action is authorized by the Civil Rights Act, 42 U.S.C. § 1983; federal jurisdiction is conferred by 28 U.S.C. § 1343(3); and the declaratory and injunctive relief sought is authorized by 28 U.S.C. § 2201 et seq.

The complaint (amended), couched in terms of a class action alleges in substance that the button or symbol in question is meant to indicate that the wearer desires the immediate cessation of American military operations in Viet Nam; that the individual plaintiffs wish to continue to display the symbol; and that the threat of prosecution has the effect of dissuading (1) large numbers of the plaintiff class from displaying the symbol and (2) the Committee from continuing to distribute it.

The relief sought is a declaration that the display and distribution of the symbol is "constitutionally protected conduct which may not be the subject of any criminal prosecution and that, to the extent that Section 136 of the General Business Law purports to authorize such a prosecution, it is unconstitutional." In their amended complaint, plaintiffs also requested "injunctive relief to prevent further deprivation under color of Section 136" of their constitutional rights including "a final injunction ordering the defendant, CAHN, and his agents to cease and desist from commencing any prosecution against any person as a result of such person's exhibiting or distributing the symbol in question, or any similar symbol designed to dramatize the wearer's political be-

liefs, in Nassau County." Subsequent to the commencement of these proceedings, however, the defendant agreed to refrain from commencing prosecutions under Section 136(a) during the pendency of this case, and further expressed his willingness to abide by the determination of this court with regard to the merits of the controversy. On that pledge, plaintiffs have represented that "no present need for equitable relief appears to exist," and we agree. However that representation cannot be construed to alter the basic nature of the complaint, which is a request for relief from further prosecution and threatened prosecution under the contested statute. We have no reason to believe that relief will not be forthcoming by virtue of the District Attorney's voluntary agreement to abide by our decision. If, as plaintiff suggests, "changed circumstances require the exercise of equitable jurisdiction," we have the power to compel restraint from prosecution, Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and we may retain jurisdiction to grant injunctive relief if the need should arise.

Therefore we do not consider the representations of the parties to amount to a withdrawal of a request for injunctive relief, without which, of course, this three-judge court would have no jurisdiction, 28 U.S.C. § 2281; *see* Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Flemming v. Nestor, 363 U.S. 603, 607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). There being a continuing request for injunctive relief should circumstances require it, we have jurisdiction pursuant to § 2281 to decide the issues. Straut v. Calissi, 293 F.Supp. 1339 (D.N.J.1968). For the reasons given below, we hold that the threatened prosecutions cannot be carried out.

I.

The federal courts cannot stand at the elbows of law enforcement officers duly elected by the appropriate subdivisions of the States and advise them as to the

exercise of their respective judgments in the enforcement of laws which they have sworn to uphold. At the same time our citizens are entitled not to be threatened with prosecution because of a particular interpretation given to a somewhat ambiguous statute by a prosecutor whose views on public issues may differ from others. The wielding of such individual power approaches too closely that exercised in the so-called totalitarian countries.

In this case both plaintiffs and the District Attorney have acted in conformity with the best precepts of our "law and order" society. Before taking any action which might have led to violence and arrest, they have sought an adjudication of their respective rights from the courts. Although the courts are by no means infallible, they can at least, where the circumstances warrant, give their best judgment with respect to the specific problem posed.

The challenged subsection of section 136 has never been interpreted by the New York courts; indeed as far as we are aware, subsection (a) has never been invoked in a criminal prosecution. In consideration of our view that the statute involved here is somewhat ambiguous, the question arises of abstention in order to give to the state courts an opportunity to construe the statute in the light of plaintiffs' fears. However, the Supreme Court's opinion in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967) is persuasive that under the circumstances here presented this court should assume jurisdiction. In *Zwickler* the Court said:

> In thus expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. 389 U.S. at 248, 88 S.Ct. at 395.

An additional reason which militates against waiting for a state court construction is found in the urgency for prompt resolution of the issue here. The Supreme Court dealt with the situation in the following statement:

> In such case to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect.
> *Id.* at 252, 88 S.Ct. at 397.

We believe that possibility exists here, and the plaintiffs are therefore entitled to an expeditious adjudication of the issues.

## II.

The draftsman of this statute was doubtless most anxious, by a proliferation of words, to cover all contingencies. But the words should not becloud the real meaning and purpose of the statute.

Parsing the sentence, as if in an exercise in grammar: the verb or act is "place or caused to be placed", and the object is "word, figure, mark, picture, design, drawing, or any advertisement." But the all important inquiry is: upon what is it to be placed? Here again the draftsman is equally all inclusive. The statute specifies "flag, standard, color, shield or ensign of the United States of America, * * *." In other words it is not "any" flag but rather *the* flag of the United States. The word "color" is meaningless in this context except as it be construed as the official flag, standard or shield of the United States.

After defining the prohibited acts and declaring violation to be a misdemeanor, the statute, however, proceeds to state what the words "flag, standard, color, shield or ensign" shall include. The definitions in section 136 are expanded to include a representation

> "evidently purporting to be, either of, said flag, standard, color, shield or ensign, of the United States of America, or of the State of New York, or a picture or a representation, or either thereof, upon which shall be shown the colors, the stars, and the stripes, in any number of either thereof, or by

which the person seeing the same, without deliberation may believe the same to represent the flag, colors, standard, shield or ensign of the United States of America or of the state of New York."

If the words of this definition are to be taken literally, they could describe an object which is not an American flag or, since the definition is phrased in the disjunctive, assign the determination of violation to the eye, mind and belief, without deliberation, of any person viewing the allegedly offending symbol. So read, the prohibition of subsection (a) would have an almost unlimited sweep. But constitutionality should not depend on hypothetical situations carried to the point of absurdity.

In holding section 136(a) to be constitutional and, properly interpreted, as in no way abridging First Amendment rights, we believe that the many cases cited to us relating to symbolic speech become relevant if at all only tangentially to the problem posed here. We have no doubt that symbolic speech is constitutionally recognized, see Tinker v. Des Moines School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (wearing of black armbands); Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed 1117 (1931) (public display of a red flag), but this statute as we construe it does not prohibit speech whether actual or symbolic. Nor does this statute compel an affirmative showing of proper respect for the flag, see West Virginia

State Board of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (flag salute), or attempt to make the flag immune from political comment, see Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969). The most recent case involving flag desecration statutes, Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970) likewise has no bearing on the issue presented here. In *Cowgill*, the defendant was convicted of flag mutilation for cutting up an actual American flag and fashioning it into a vest which was worn on a public street. In concurring in the vote to dismiss Cowgill's appeal, Mr. Justice Harlan, with whom Mr. Justice Brennan joined, noted that there was no attempt at dissemination of ideas apparent in this conduct from the record on appeal.

■ However, whether or not plaintiffs' emblems constitute symbolic expressions of political ideologies "akin to 'pure speech' " [4] and thus are entitled to plenary protection under the First Amendment, this subsection, on its face, in our opinion simply does not apply to the display and distribution of these buttons. Subsection (a) does not purport to circumscribe every use of the flag or representations thereof; its thrust is to prohibit any disfiguration or alteration of the flag itself as well as to prevent commercial exploitation of the national and the State flags or shields for private benefit.[5] Desecration of the flag for

---

4. Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 505–506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

5. The constitutionality of a statute virtually identical with the present New York statute was upheld by the Supreme Court in Halter v. Nebraska, 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696 (1907). Although the act involved in *Halter* was the placing of the American flag as an advertisement on a bottle of beer, the right of the State to legislate on the subject of the flag and the reasons therefor have not changed over the years. Even in 1907 apparently more than half of the states had statutes similar to the Nebraska statute.

As the former Mr. Justice Harlan said, in upholding the constitutionality of the state statute:

From the earliest periods in the history of the human race, banners, standards and ensigns have been adopted as symbols of the power and history of the peoples who bore them. It is not then remarkable that the American people, acting through the legislative branch of the government, early in their history, prescribed a flag as symbolical of the existence and sovereignty of the nation. Indeed, it would have been extraordinary if the government had started this country upon its marvelous career without giving it a

most purposes is governed by subsections (d) and (f) of the statute.[6] Subsections (a), (b) and (c), when read together, further prohibit any representation in any form calculated to associate the symbols of sovereignty of the United States and the State of New York with any private endeavor. Thus subsection (b) prohibits exposure to public view, manufacturing, selling or giving away any article of merchandise or container for merchandise bearing a representation calculated to evoke association with the sovereign. Subsection (c) proscribes a similar use of the flag or other sovereignty symbol by imprinting it on checks or letters for "business purposes or correspondence." Subsection (a) prohibits display of a national or State symbol upon which is painted, printed, placed, affixed, etc. "any word, figure, mark, picture, design, or drawing, or any *advertisement of any nature, * * * *"*. (emphasis added). A reading only of this subsection together with the section's broad definition of a flag or symbol might lead one to conclude, as did the District Attorney, that cluttering up a flag or a representation of it with any

sort of mark for any purpose would be covered by subsection (a). Read in the context of the seven separate prohibitions of section 136, however, it seems clear that subsection (a) was not intended to cover nearly so much territory. The District Attorney's broad reading of the subsection would make criminal the possession of all those reproductions of the face of President John F. Kennedy superimposed upon a picture of the American flag which hang on the walls of shops, homes and offices all over this country. And what of the millions of celluloid campaign buttons which for generations, including the time before this statute was enacted, have carried the photographs of the aspiring Presidential and other candidates against a background of one or more American flags in full color? Obviously it was not the intent of the New York legislature when it enacted this law to turn its citizens into criminals merely because they chose to express their political preferences by wearing such buttons on their lapels.

■■ We can only conclude that no subsection of section 136 was intended

---

flag to be recognized as the emblem of the American Republic. For that flag every true American has not simply an appreciation but a deep affection. No American, nor any foreign born person who enjoys the privileges of American citizenship, ever looks upon it without taking pride in the fact that he lives under this free government. Hence, it has often occurred that insults to a flag have been the cause of war, and indignities put upon it, in the presence of those who revere it, have often been resented and sometimes punished on the spot.

205 U.S. at 41, 27 S.Ct. at 421.

And recently in Street v. New York, 394 U.S. 576, 594, 89 S.Ct. 1354, 1367, 22 L.Ed.2d 572 (1969), the Court recognized that:

disrespect for our flag is to be deplored no less in these vexed times than in calmer periods of our history.

6. New York General Business Law § 136: "Any person who:

(d) shall publicly mutilate, deface, defile, or defy, trample upon, or cast contempt upon either by words or act, or

* * * * *

(f) shall publicly carry or display any emblem, placard or flag which casts contempt, either by word or act, upon the flag of the United States of America * * *

Shall be guilty of a misdemeanor."

Paragraph (d), *supra*, was before the Supreme Court in Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969). Stating preliminarily that "we resist the pulls to decide the constitutional issues involved in this case on a broader basis than the record before us imperatively requires," the Court held only that the statute "was unconstitutionally applied in appellant's case because it permitted him to be punished merely for speaking defiant or contemptuous words about the American flag." 394 U.S. at 581, 89 S.Ct. at 1360. Thus the statute continues in force and may be invoked, in an appropriate case, to punish conduct which seeks to "cast contempt upon" the flag. *See* New York v. Radich, 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E.2d 30 (1970).

to apply to the wearing or distribution of these buttons. Were it so interpreted, the statute might well be unconstitutionally overbroad. However, a common-sense reading of section 136 in its entirety compels us to conclude otherwise. It is the flag itself which the statute seeks to protect from physical alteration, and no attempt to alter an actual American flag is presented by the plaintiffs' buttons and decals. Insofar as the all-inclusive definition of "flag" contained in the statute following the prohibitory sections may be construed to apply to the prohibition contained in subsection (a), it is impermissibly broad and cannot constitutionally be invoked to make criminal the wearing and distribution of these symbols. However, subsection (a) itself is not unconstitutional. As we view the statute, while the broad statutory definition becomes useful in manifesting the scope of other prohibitions within the section, that definition is not necessary to effect the legitimate purpose of subsection (a).

Therefore it is not lack of constitutionality of the subsection which concerns us but rather interpretation of the whole statute as it might apply to the symbol in issue here. If there be violation, it must be found within the statute itself. There is no claim that the wearing or display of the symbol would incite to riot or public disorder, that it offends public decency by casting contempt on the flag or that it subjects the flag to commercial exploitation. We can say here as did the Court in Halter v. Nebraska, 205 U.S. 34, 45, 27 S.Ct. 419, 423, 51 L.Ed. 696 (1907) that "Before this court can hold the statute void it must say that [the statute has no reasonable connection with the common good and was not promotive of the peace, order and well-being of the people] and, in addition, adjudge that it violates rights secured by the Constitution of the United States.

We cannot so say and cannot so adjudge."

The judgment in this case is that, properly applied, section 136(a) is not unconstitutional; that the particular symbol affixed to the complaint whether worn, displayed or distributed does not come within the purview of section 136 (a); and that any such wearing, display or distribution does not constitute a crime as defined therein. The court limits its opinion to the symbol before it and expresses no views as to any other or different symbol or statute.

It is so ordered.

### APPENDIX

[A 2691] ©1969

———◆———

TRAVIA, District Judge (concurring in part and dissenting in part):

I am doubtful about the jurisdiction of this three-judge Court to hear the present action in light of the plaintiff's notation at p. 24 of their Memorandum in Support of Plaintiffs' Motion for Summary Judgment that " * * * no present need for equitable relief appears to exist." [1]

---

1. The full text of the statement reads:
"The defendant herein has represented to the court on several occasions that he will refrain from commencing prosecutions under Section 136(a) during the pendency of these proceedings. He has also pledged to respect the determination of this court on the merits. Accordingly, no present need for equitable relief appears to exist. However, should changed cir-

The three-judge panel was convened pursuant to 28 U.S.C.A. §§ 2281, 2284. Section 2281 provides for such a court where an injunction is sought to restrain the enforcement of a State statute on the ground of its unconstitutionality. The section was adopted to reduce the dangers of single Federal judges' enjoining State legislation, and was framed to apply only where injunctive relief was sought. *See* Swift & Co. v. Wickham, 382 U.S. 111, 120, 127, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). Under the analogous provisions of 28 U.S.C.A. § 2282, dealing with Federal statutes, when plaintiffs seek only a declaration of the invalidity of legislation, without also " * * * affirmatively [seeking] to interdict the operation of a statutory scheme," a single judge alone must hear the case. Flemming v. Nestor, 363 U.S. 603, 607, 80 S.Ct. 1367, 1371, 4 L.Ed.2d 1435 (1960). Since injunctive relief is no longer being sought in the present case, this Court should have dissolved itself into a single-judge court. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 152–155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *see* Smith v. State Executive Committee of Dem. Party of Ga., 288 F.Supp. 371, 374 (N.D.Ga.1968). *But see* Straut v. Calissi, 293 F.Supp. 1339, 1340 at n. 1 (D.N.J. 1968).

However, since the merits have been reached and disposed of by the majority in a manner with which I cannot agree, I must dissent.

First, Section 136(a) of the New York General Business Law does not appear to apply only to commercial uses of the United States Flag. Rather, it applies to the placing of " * * * *any* word, figure, mark, picture, design, drawing, *or any* advertisement, *of any* nature upon *any* flag * * * of the United States

* * * * " when this is done "[i]n *any manner*, for exhibition or display * *." (Emphasis added). Read with the all-inclusive definition of a flag following subsection (g), it is apparent that the provision in question was intended to apply, and does apply, to the decals and buttons which plaintiffs seek to immunize from illegality. On a recognizable representation of the flag, including both the stars and the stripes, which are characteristic of the American Flag, as they would appear if the edges of the Flag were cut off in a circular manner, the plaintiffs have placed, "[i]n [some] manner, for exhibition [and] display * * * [a] figure, mark, picture, design, [or] drawing. * * * " Here the statute reads in the disjunctive: " * * * or any advertisement * * *," suggesting that advertisements alone were not meant to be proscribed.

The majority suggests that numerous pictures of President John F. Kennedy on a background of the American Flag would be proscribed by § 136(a). However, these pictures would come under the exception provided in the second paragraph following § 136(g), which states that "This section shall not * * * be construed to apply to [an] ornamental picture, article of jewelry * * * on any of which shall be printed, painted or placed, said flag * * * disconnected and apart from any advertisement." Indeed, this limited exception, which does not even apply to advertisements, suggests that except for representations of the flag which fall within it, all such representations are proscribed.

Since the decal and button designs are proscribed, the issue of the constitutionality of that proscription must be reached. I agree with the majority that the statute in general is constitutional, but I further conclude that the statute, as ap-

---

cumstances require the exercise of equitable jurisdiction, this court possesses ample power to grant injunctive relief. Dom-

browski v. Pfister, 380 U.S. 479, [85 S.Ct. 1116, 14 L.Ed.2d 22] (1965)."

plied to these items, must be upheld. The special nature of the American Flag has been recognized in several decisions. *See* Halter v. Nebraska, 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696 (1907); People v. Radich, 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E.2d 30 (1970). Indeed, the Supreme Court in Street v. New York, 394 U.S. 576, 594, 89 S.Ct. 1354, 1367, 22 L.Ed.2d 572 (1969) noted that " \* \* \* disrespect for our flag is to be deplored no less in these vexed times than in calmer periods of our history." The "peace symbol" or anything else superimposed upon the flag has the effect of destroying the integrity of the flag and reducing its status as " \* \* \* a special kind of personalty." *Id.* at 616, 89 S.Ct. 1354 (Fortas, J., dissenting). The State has a legitimate interest in preserving the flag's integrity from impingement by different groups which seek to turn it from its central purpose as a symbol of America to a symbol of their own special concerns.

Section 136(a) attempts to achieve that purpose by its provisions which are limited in their scope to prohibiting the conduct of placing and displaying any mark upon the flag. No speech or communicative conduct is in any way restricted. Nor is the expression of any point of view on any issue, including the merits of the flag itself and what it stands for, limited. Unlike the statute in Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), § 136(a) does not attempt to suppress the communication of any particular ideas, *cf.* United States v. O'Brien, 391 U.S. 367, 382, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) but, in a politically neutral manner only seeks to preserve the national banner. And, unlike the situation in Street v. New York, *supra,* where the Court feared that the defendant may have been convicted for his words rather than his conduct, in a prosecution under § 136(a) speech can play no part.